[No. A122581. First Dist., Div. One. Aug. 13, 2009.]

In re B.R. et al., Persons Coming Under the Juvenile Court Law.
MARIN COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Respondent, v.
G.R., Defendant and Appellant.

774

776

**Counsel**

Caroline J. Todd, under appointment by the Court of Appeal, for Defendant and Appellant.

Patrick K. Faulkner, County Counsel, and Jessica F. Mills, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**MARGULIES, J.**—This appeal presents the issue of whether the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.)[1] (ICWA), applies when the minors' presumed father in a juvenile dependency proceeding alleges that his *adoptive* father has one-quarter ancestry in a federally recognized Indian tribe. We hold that the ICWA notice provisions do apply in these circumstances, and conditionally reverse the juvenile court's order terminating parental rights so that notice of the proceedings may be given to the tribe in question.

## I. BACKGROUND

On June 7, 2007, the Marin County Department of Health and Human Services (Department) received a "general neglect" referral. In response, a Department social worker and deputies from the county sheriff's office conducted a welfare check of G.R.'s (Mother) apartment. The deputies placed Mother under arrest when she became combative, and the social worker took the children into temporary protective custody. Several days later the Department filed a petition under Welfare and Institutions Code section 300, subdivision (b).

At the jurisdiction/disposition hearing on July 19, 2007, the juvenile court sustained allegations that Mother had failed to provide the children with appropriate shelter, in that the Department had found her home to be in "deplorable" condition, "hazardous to the children's health, and unfit for human or animal habitation." Both children had also been found to suffer from "emotional and cognitive effects of neglect." The sustained allegations further stated that Mother had failed to provide the children with adequate dental care, in that both were found to suffer from "serious tooth decay and infection" requiring treatment that included multiple cavity fillings, tooth extractions, and baby root canals. The court ordered out-of-home placement for the children, and ordered reunification services for Mother and for Richard H., whom the court found to be the noncustodial presumed father.

Following a contested review hearing in late March 2008, the court ordered the termination of reunification services for Mother, and set the matter for the selection of permanent plans pursuant to Welfare and Institutions Code section

---

[1] All further statutory references are to the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) unless otherwise specified.

366.26. Mother filed a writ petition challenging the order, which this court denied by nonpublished opinion filed on June 18, 2008. (*G.R. v. Superior Court* (June 18, 2008, A121247).)

After a contested Welfare and Institutions Code section 366.26 hearing, the juvenile court found that the children were adoptable and determined that adoption was the best permanent plan for them. The court ordered that Mother's and Richard H.'s parental rights be terminated and that the children be referred for adoptive placement. Mother timely appealed.

## II. DISCUSSION

Mother contends the order terminating parental rights must be reversed because no notices were sent to the Apache tribes pursuant to the ICWA.

### A.  *ICWA-related Facts*

Based on information provided by Richard's biological sister, J.G., the Department's jurisdiction report stated that the children had Seneca and Delaware Indian ancestry and the ICWA may apply. The Department later reported in a July 6, 2007 submission to the court that it was "in the process of notifying the Seneca and Delaware tribes." At the jurisdiction/disposition hearing, the court inquired of the parents and of the maternal and paternal grandmothers who were present at the hearing whether they knew if either parent had any other possible Native American heritage. Richard's mother reported that Richard was adopted and that his adoptive father was one-fourth Apache Indian. The court made findings that the ICWA "may apply" as some tribes had been identified and sent notices but had not responded, and that the "Apache tribes, identified July 19, 2007, will be noticed if required by law." The court apparently added the "if required by law" condition in light of a comment by minors' counsel that notice might not be required since Richard was not the biological child of the parent reported to have Apache Indian ancestry.

Notices were subsequently sent to the Delaware Nation of Oklahoma, Cayuga Nation of New York, Seneca-Cayuga Tribe of Oklahoma, Seneca Nation of Indians, Tonawanda Band of Senecas, and the Sacramento Area Director of the Bureau of Indian Affairs. The Delaware Nation of Oklahoma, Seneca-Cayuga Tribe of Oklahoma, Seneca Nation of Indians, and

Tonawanda Seneca Nation wrote back, stating that the children were not members or eligible for membership. No notices were mailed to the Apache tribes.

At the six-month review hearing in March 2008, the court made a finding that the ICWA did not apply. No objection regarding the Department's compliance with the ICWA was made by Mother or Richard at that time. No ICWA issue was raised in Mother's writ petition or by either parent at any other time before the present appeal.

B. *Procedural Issues*

■ As an initial matter, we reject the Department's claim that Mother waived the issue of ICWA notice to the Apache tribes by failing to raise it earlier. The Department relies on *In re Pedro N.* (1995) 35 Cal.App.4th 183 [41 Cal.Rptr.2d 819], which held that a parent can waive an ICWA notice claim by failing to raise it in a timely appeal and then seeking to raise it for the first time in a later appeal. (*Pedro N.*, at pp. 189–190.) We agree with the view taken in *In re Marinna J.* (2001) 90 Cal.App.4th 731 [109 Cal.Rptr.2d 267], which questioned the conclusion reached in *Pedro N.* and observed that "it would be contrary to the terms of the [ICWA] to conclude . . . that parental inaction could excuse the failure of the juvenile court to ensure that notice . . . was provided to the Indian tribe named in the proceeding." (*In re Marinna J.*, at p. 739.) Similarly, the Court of Appeal in *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247 [126 Cal.Rptr.2d 639], rejected *Pedro N.* and held that the juvenile court had a sua sponte duty to ensure compliance with ICWA notice requirements "since notice is intended to protect the interests of Indian children and tribes despite the parents' inaction." (*Dwayne P.*, at p. 261.) We agree with *In re Marinna J.* and *Dwayne P.* that the parents' failure to raise the ICWA issue now before us does not prevent us from considering the issue on the merits. (See also *In re Nikki R.* (2003) 106 Cal.App.4th 844, 848 [131 Cal.Rptr.2d 256]; *In re Suzanna L.* (2002) 104 Cal.App.4th 223, 231–232 [127 Cal.Rptr.2d 860].) Further, this is not a case in which a forfeiture may be found because the parents have raised a series of ICWA issues in successive appeals after failing in each instance to raise the issue in the trial court. (See *In re X.V.* (2005) 132 Cal.App.4th 794, 804–805 [33 Cal.Rptr.3d 893].)

■ Finally, although Mother is not the parent with alleged Indian heritage, she still has standing to raise the issue of ICWA compliance. (*In re Jonathon S.* (2005) 129 Cal.App.4th 334, 339 [28 Cal.Rptr.3d 495].) Under

section 1914, any parent or the Indian child's tribe may petition to invalidate a placement or termination order for failure to comply with ICWA requirements.

## C. *Applicability of ICWA*

The purpose and background of the ICWA were explained as follows in *In re Junious M.* (1983) 144 Cal.App.3d 786 [193 Cal.Rptr. 40] (*Junious M.*): "The [ICWA] was enacted '. . . to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, . . .' (§ 1902.) The legislation was Congress' response to its findings that '. . . an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; . . .' (§ 1901, subd. (4); [citations].)" (*Id.* at pp. 789–790, fn. omitted.) Prior to the enactment of the ICWA, surveys found that in states with large Native American populations 25 to 35 percent of all Native American children were removed from their homes and placed in foster or adoptive homes at one time during their lives, often because state officials disapproved of traditional Native American child-rearing practices, such as reliance on extended families, or opted to remove Native American children due to alcoholism in disproportionate numbers compared to other populations affected by the disease. (Jones, The Indian Child Welfare Act Handbook (1995) pp. 2–3.)

Congress achieved the goals of the ICWA, in part, by allowing Indian tribes to take jurisdiction over or intervene in state court proceedings for foster care placement, termination of parental rights, preadoptive placement, and adoptive placement involving Indian children. (§§ 1903(1), 1911(b), 1912(c); *Junious M., supra,* 144 Cal.App.3d at p. 790.) Because the tribe's right to assert jurisdiction over the proceeding or to intervene in such proceedings would be meaningless if the tribe has no notice that the action is pending (see *Junious M.,* at pp. 790–791), section 1912 therefore provides in relevant part as follows: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. . . . No foster care placement or termination of parental rights proceeding shall be held until at

least ten days after receipt of notice by the parent or Indian custodian and the tribe . . . ." (§ 1912(a).) Violation of the notice provisions may invalidate the proceeding. (§ 1914.)

■ The ICWA protects "Indian children who are members of or are eligible for membership in an Indian tribe." (§ 1901(3).) For purposes of the ICWA, " 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (§ 1903(4).) The tribe in question must be a federally recognized Indian tribe, group, band, or community eligible for federal services provided to Indians. (§ 1903(8); *In re John V.* (1992) 5 Cal.App.4th 1201, 1217 [7 Cal.Rptr.2d 629].)

The Department apparently determined in this case that no notices to the Apache tribes were "required by law" under the court's July 19, 2007 findings because the minors were not biological descendants of an ancestor with Apache blood. In the present appeal, Mother insists that the Department had no right to make that determination under the ICWA absent notice of the proceeding to the Apache tribes and an opportunity for the tribes to respond. Mother argues that despite the lack of a biological link, the minors could still be—under the Apache tribes' own membership rules—either (1) members of the tribe or (2) eligible for membership in a tribe and the biological children of a member of that tribe. According to Mother, a determination of the minors' membership status in a tribe is not for the state court or a social worker to make as a matter of law under the ICWA. For the reasons discussed below, we agree with Mother's position.

In *Junious M.*, another panel of this court discussed how to go about determining the status of a child who may be an Indian child. The *Junious M.* court relied on guidelines promulgated by the Department of the Interior's Bureau of Indian Affairs (BIA) shortly after passage of the ICWA. (*Junious M., supra*, 144 Cal.App.3d at pp. 792–794; see Guidelines for State Courts; Indian Child Custody Proceedings (44 Fed.Reg. 67584 et seq. (Nov. 26, 1979)) (Guidelines).) As the Court of Appeal noted, the Guidelines represent the Department of the Interior's interpretation of certain provisions of the ICWA. (*Junious M.*, at p. 792, fn. 7.) The Department of the Interior's construction of the statute—being that of the executive agency charged with administering it—is entitled to great weight even though it is not binding on us. (*Ibid.*)

■ Insofar as relevant to the issue before us, the Guidelines state that the fundamental policy of the ICWA is to express Congress's "clear preference for keeping Indian children with their families, deferring to tribal judgement

on matters concerning the custody of tribal children, and placing Indian children who must be removed from their homes within their own families or Indian tribes." (Guidelines, *supra*, at pp. 67585–67586.) The Guidelines further provide that the ICWA and all regulations, guidelines, and state statutes relating to it "shall be liberally construed in favor of a result that is consistent with these preferences. Any ambiguities in any of such statutes, regulations, rules or guidelines shall be resolved in favor of the result that is most consistent with these preferences." (Guidelines, *supra*, at p. 67586.)

■ As explained in *Junious M.*, the Guidelines and accompanying commentary emphasize that when it comes to the determination of a child's Indian tribe membership status, it is for the tribe itself to make that determination: "As to determining the status of a child as an Indian child, the Guidelines provide: 'When a state court has *reason to believe* a child involved in a child custody proceeding is an Indian, the court *shall seek verification* of the child's status from either the Bureau of Indian Affairs or the child's tribe. . . . [¶] . . . *The determination by a tribe* that a child is or is not a member of that tribe, is or is not eligible for membership in that tribe, or that the biological parent is or is not a member of that tribe *is conclusive*. . . . [¶] . . . Circumstances under which a state court has reason to believe a child involved in a child custody proceeding is an Indian include . . . . [¶] . . . Any party to the case . . . informs the court that the child is an Indian child.' [Citation.] [¶] The commentary to this portion of the Guidelines states, 'This guideline makes clear that *the best source of information on whether a particular child is Indian is the tribe itself. It is the tribe's prerogative to determine membership criteria and to decide who meets those criteria.* [Citation.]' [Citations.]" (*Junious M., supra,* 144 Cal.App.3d at p. 793, last italics added.)

In light of these considerations, the Court of Appeal in *Junious M.* held that the trial court erred in hearing evidence on and deciding the issue of whether the minor's possible connection to the Nooksack Tribe would or would not make him an "Indian child" for purposes of the ICWA. (*Junious M., supra,* 144 Cal.App.3d at p. 792.) The Court of Appeal stated: "The [juvenile] court erred in approaching resolution of the issue in this manner, since the question of whether the minor was an Indian child was one for the tribe to determine." (*Ibid.*) It reversed the judgment and remanded for the trial court to afford notice to the Nooksack Tribe of the pending proceedings so that the tribe could determine whether the minor was an Indian child for purposes of the ICWA. (*Junious M.,* at pp. 797–798.)[2]

---

[2] Later California cases have followed *Junious M.* in recognizing the ICWA's policy of letting potentially affected tribes decide the question of tribal membership when the issue is uncertain. (See, e.g., *In re Jose C.* (2007) 155 Cal.App.4th 844, 848 [66 Cal.Rptr.3d 355]; *In re Desiree F.* (2000) 83 Cal.App.4th 460, 471 [99 Cal.Rptr.2d 688].)

■ In our view, an equivalent error was committed here. The trial court left it to the Department to determine whether the minors were Indian children for purposes of the ICWA, rather than letting the Apache tribes make that determination by ordering that notice be sent to the tribes. It is true that in this case the minors were not the biological children of a parent with Indian blood. They are the grandchildren by adoption of an ancestor with Indian blood. But the definition of "Indian child" under the ICWA does not by its terms automatically exclude such children. ■ To the contrary, the ICWA focuses on "membership" rather than racial origins. It protects children who are "members of or are eligible for membership in" federally recognized Indian tribes. (§ 1901(3).) The definition of "Indian child" in section 1903(4) does not by its own literal language require either that the child's biological parents be members of a tribe or that one of the child's biological parents have tribal ancestry. Such a child could still be an "Indian child" for purposes of the ICWA so long as either (1) *the child is a member of an Indian tribe* or (2) *one of the child's biological parents is a member of the tribe and the child is eligible for membership.*

Tribal membership is treated under the ICWA as a matter of political affiliation rather than racial origin: "The ICWA recognizes the political affiliation that follows from tribal membership in a federally recognized tribe, rather than a racial or ancestral Indian origin . . . ." (*In re Vincent M.* (2007) 150 Cal.App.4th 1247, 1267 [59 Cal.Rptr.3d 321].) In incorporating the ICWA requirements into state law, the California Legislature explicitly found and declared that tribal membership is a question of political affiliation and that a tribe's determination of its membership is binding on the state: "A determination by an Indian tribe that an unmarried person, who is under the age of 18 years, is either (1) a member of an Indian tribe or (2) eligible for membership in an Indian tribe and a biological child of a member of an Indian tribe shall constitute a significant political affiliation with the tribe and shall require the application of the federal Indian Child Welfare Act to the proceedings." (Welf. & Inst. Code, § 224, subd. (c).)

As Mother points out, if Congress had wanted to limit the ICWA solely to children who are biological descendants of a federally recognized tribe, it knew how to do so. For example, in the Indian Reorganization Act of 1934 (25 U.S.C. § 461 et seq.), Congress defined "Indian" as follows: "[A]ll persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include all other persons of one-half or more Indian blood. For the purposes of this Act, Eskimos and other aboriginal peoples of Alaska shall be considered Indians." (25 U.S.C. § 479.)

784

The issue of whether an adoptive relationship can trigger ICWA notice requirements came before the Vermont Supreme Court in *In re M.C.P.* (1989) 153 Vt. 275 [571 A.2d 627]. There, the minor was the adoptive child of a Mohawk Indian. (*Id.*, 571 A.2d at p. 629.) The minor's adoptive father testified that while the child was not currently a member of the Mohawk Tribe, she could be eligible for membership in the tribe. (*Id.* at p. 632.) Based on that testimony and the child's adopted status, the trial court ruled that she did not meet the definition of an "Indian child" under section 1903(4), and that no notice of the proceeding need be given to the Mohawk Tribe. (*In re M.C.P.*, at p. 632.) The Vermont Supreme Court reversed, finding that under the ICWA it was up to the Mohawk Tribe itself to determine whether the minor was a member of the tribe. (*In re M.C.P.*, at pp. 632–635.)

The court first focused on the language of the ICWA's notice provision, section 1912(a): "The notice provision, 25 U.S.C. § 1912(a), applies not only when the trial court finds the juvenile is an Indian child but also when the court 'has reason to know that an Indian child is involved.' This language reflects the fact that Indian tribes have an interest in Indian child welfare proceedings apart from the parties and that the information provided by the parties bearing on whether the juvenile is an Indian child may be incomplete. It also reflects the fact that Indian tribes are in a better position to determine the membership of individuals who have some relationship to the tribe and the court should defer to this expertise." (*In re M.C.P., supra*, 571 A.2d at p. 633, fn. omitted.) The Vermont court also found that requiring notice in the case of an adoptive parent with Indian ties was consistent with the Guidelines and with the approach taken in other notice cases, including *Junious M.*: "The cases that have resolved notice questions have followed the Guidelines in giving a broad reading to the obligation to give notice and redressing notice violations even where it is unclear that the child involved is an Indian child." (*In re M.C.P.*, at p. 633.) Finally, noting that the ICWA provided for collateral attack on juvenile placements for violation of the notice requirement, the court observed that "[t]o maintain stability in placements of children in juvenile proceedings, it is preferable to err on the side of giving notice and examining thoroughly whether the juvenile is an Indian child." (*In re M.C.P.*, at pp. 634–635.)

The Department argues that the putative father's lack of a biological tie to an Apache tribe precludes any notice requirement under the ICWA, citing *In re E.G.* (2009) 170 Cal.App.4th 1530 [88 Cal.Rptr.3d 871] (*E.G.*). In *E.G.*, the Court of Appeal held that no ICWA notice was required when the minor's *alleged* father claimed Indian heritage: "Until biological paternity is established, an alleged father's claims of Indian heritage do not trigger any ICWA notice requirement because, absent a biological connection, the child cannot claim Indian heritage through the alleged father. Since [the alleged father]

was excluded [by a paternity test] as a biological father of the child, no notice was required under ICWA." (*E.G.*, at p. 1533.) Thus, there was no claim in *E.G.* that the alleged father had any adoptive *or* biological relationship to the child. Under those circumstances, we agree that it was impossible for the child to meet the definition of an Indian child under section 1903(4) by virtue of the child's relationship with the alleged father. But in this case, the minors *are* biologically related to the father and the father is potentially a member of an Apache tribe via his adoptive relationship with the minors' grandfather. To the extent *E.G.* suggests in dictum that no ICWA notice is ever required unless the minor is shown to potentially have Indian blood, we respectfully disagree with it.[3]

■ Based on Congress's choice of words in section 1903(4), the interpretative guidelines promulgated by the BIA, and the policy considerations and preferences reflected in the ICWA, as discussed in *Junious M., In re M.C.P.*, and other cases, we hold that the trial court erred in this case in not requiring notice to the Apache tribes. Further, we reject the Department's claim that any such error was harmless. "Courts have consistently held failure to provide the required notice requires remand unless the tribe has participated in the proceedings or expressly indicated they have no interest in the proceedings." (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1424 [285 Cal.Rptr. 507]; see also *In re Jonathan D.* (2001) 92 Cal.App.4th 105, 110 [111 Cal.Rptr.2d 628].) That was not the case here. Cases finding notice errors harmless when incomplete notices were sent or no specific Indian tribe was identified are distinguishable. (See *In re Alexis H.* (2005) 132 Cal.App.4th 11 [33 Cal.Rptr.3d 242]; *In re Antoinette S., supra,* 104 Cal.App.4th 1401.)

The appropriate remedy for the notice failure in this case is to reverse and remand the order terminating parental rights to allow notice to be given to the Apache tribes. If no tribe responds or the responses received indicate that the minors are not Indian children, the order terminating parental rights should be reinstated. If any tribe determines the children are Indian children, the juvenile court should conduct a new Welfare and Institutions Code section 366.26 proceeding applying the provisions of the ICWA and state law implementing it.

---

[3] At least one other California appellate case has rejected, in dictum, the assertion that proof of biological descendance is required to establish eligibility for membership in a tribe. In *In re Antoinette S.* (2002) 104 Cal.App.4th 1401 [129 Cal.Rptr.2d 15], the Court of Appeal responded as follows to a statement to that effect contained in a form response sent by the BIA to the court: "While true enough for our purposes, the BIA overstates the matter, considering that '[n]early all tribal constitutions provide for adoption through special action by the tribe, subject to review by the Secretary of the Interior.' (Cohen, Handbook of Federal Indian Law (1942) p. 136.)" (*Id.* at p. 1408, fn. 2.)

## III. DISPOSITION

The juvenile court's order terminating parental rights and referring the minors for adoptive placement is conditionally reversed. The matter is remanded to the juvenile court with directions to proceed in compliance with the notice provisions of the ICWA and Welfare and Institutions Code section 224.2, in accordance with the views expressed in this opinion. If, after proper notice to the Apache tribes, the court finds that the minors are Indian children, the juvenile court shall proceed in accordance with the ICWA and Welfare and Institutions Code section 224 et seq. If, however, the juvenile court finds that the minors are not Indian children, the court shall reinstate the order terminating parental rights.

Marchiano, P. J., and Graham, J.,* concurred.

---

*Retired judge of the Marin Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.