Filed 7/24/13  In re D.G. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.G., JR., a Person Coming Under the Juvenile Court Law. | |
| | D063441 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J516567B) |
| v. | |
| ELISA F. et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Defendant and Appellant Elisa F.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant D.G., Sr.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Elisa F. and D.G., Sr. (Senior), appeal juvenile court orders terminating their parental rights to their son, D.G., Jr. (Junior). Elisa contends the orders must be reversed because the court did not ensure that proper notice was provided under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901). Senior asserts he should be recognized as Junior's presumed father and argues the court erred by finding the beneficial parent-child relationship exception to termination of parental rights under Welfare and Institutions Code[1] section 366.26, subdivision (c)(1)(B)(i), did not apply. Elisa and Senior also join in and adopt the arguments of each other and argue that if we reverse the order terminating the parental rights of one parent, we must reverse the order terminating the parental rights of the other. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2012, the San Diego County Health and Human Services Agency petitioned on behalf of newborn Junior under section 300, subdivision (b), alleging he was at risk of serious harm because Elisa suffered from a mental illness and did not take her prescribed medication. The petition also alleged Elisa and Senior have a significant history of domestic violence and had their parental rights terminated as to another child in 2010. It further alleged under section 300, subdivision (g), that Elisa and Senior were institutionalized or incarcerated and unable to arrange adequate care for Junior

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

Elisa told the social worker that Senior is Junior's biological father. Senior was in custody at the time of Junior's birth.

Senior suggested he might have American Indian ancestry through the Aztec Tribe. At the detention hearing on May 2, 2012, the court found ICWA did not apply because the Aztec Tribe is not a federally recognized tribe. It ordered Senior to participate in paternity testing. On June 28, it found Senior is Junior's biological father.

At the jurisdictional/dispositional hearing on July 9, 2012, the court found the allegations of the petition to be true. It denied reunification services to both parents, continued Junior's placement in foster care and referred the matter for a section 366.26 hearing to select a permanent plan.

The social worker assessed Junior as adoptable. She reported he was an adorable, young, healthy child and was placed in an approved adoptive home with a foster family who wants to adopt him. Senior told the social worker he did not want Junior brought to the jail to see him, but after his release in January 2013, he and Junior had a two-hour visit. Twenty minutes into the visit, Junior began crying and continued to cry intermittently through the remainder of the visit.

At the section 366.26 hearing on February 8, 2013, the court considered the documentary evidence and argument by counsel. It found Junior was likely to be adopted if parental rights were terminated, and none of the statutory exceptions to termination of parental rights and adoption applied. The court terminated parental rights and ordered adoption as the permanent plan.

DISCUSSION

I

Elisa contends the orders must be reversed because after Senior claimed he might have possible Indian heritage, the court did not ensure that a reasonable inquiry was conducted or proper notice was provided under ICWA. Senior joins her argument.

When a court knows or has reason to know that an Indian child is involved in a juvenile dependency proceeding, a duty arises under ICWA to provide notice to the Indian child's tribe of the pending proceedings and the tribe's right to intervene. (25 U.S.C. § 1912(a); § 224.3, subds. (a) & (d).) "Alternatively, if there is insufficient reason to believe a child is an Indian child, notice need not be given." (*In re Shane G.* (2008) 166 Cal.App.4th 1532, 1538.) Notice requirements are meant to ensure that the child's Indian tribe will have the opportunity to intervene and assert its rights in the proceedings. (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.)

An Indian child is defined as any unmarried person under age 18 and either (a) a member of an Indian tribe, or (b) eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4).) The Indian tribe in question must be recognized by and eligible to receive funding from the United States Bureau of Indian Affairs (BIA). (*In re John V.* (1992) 5 Cal.App.4th 1201, 1217; *In re B.R.* (2009) 176 Cal.App.4th 773, 781.) The federal register lists recognized Indian tribal entities eligible to receive such services. (53 Fed.Reg. 52829 (Dec. 29, 1988).)

The information Senior supplied, that he may have possible Indian heritage through the Aztec Tribe, did not trigger a duty of inquiry and notice under ICWA because

4

the Aztec Tribe is not a federally recognized Indian tribe. It does not appear on the federal register as a recognized Indian tribal entity eligible to receive funding from the BIA. We reject Elisa's argument that Senior's suggestion he may have Aztec heritage triggered a duty to discuss the matter with him and his relatives to determine whether Aztec is the family tribe and, if so, whether the Aztecs are affiliated with a federally recognized tribe. The Random House Unabridged Dictionary defines Aztec as "a member of a Nahuatl-speaking state in central Mexico . . . ." (Random House Unabridged Dict. (2d ed. 1993) p. 147, col. 1.) Senior has offered no more definitive information on his possible Indian heritage or any reason to believe the Aztecs are affiliated with a federally recognized tribe. Because there was no reason to believe Junior was an Indian child, Elisa has not shown the court erred by not conducting further inquiry and providing notice under ICWA.

II

Senior, joined by Elisa, contends he should be recognized as Junior's presumed father under *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 (*Kelsey S.*). Senior did not request presumed father status during the dependency proceedings. He has thus forfeited this issue for appeal. Moreover, even considering his argument, we conclude the evidence would not have supported a finding that Senior is Junior's presumed father.

A man is a presumed father if he meets the criteria of Family Code section 7611. Under Family Code section 7611, subdivision (d), a man who has neither legally married nor attempted to marry the child's mother may attain presumed father status if he "receives the child into his home and openly holds out the child as his natural child." If a

5

biological father is not a presumed father under statutory presumptions, he may attain presumed father status when he has made "a full commitment to his parental responsibilities--emotional, financial, and otherwise," but a third party thwarts his attempts to achieve presumed father status under Family Code section 7611, subdivision (d). (*Kelsey S.*, *supra*, 1 Cal.4th at p. 849.)

In *Kelsey S.*, the California Supreme Court held the parental rights of a biological father who has made timely efforts to fulfill his parental responsibilities cannot be terminated unless there is a finding he is unfit. (*Kelsey S., supra*, 1 Cal.4th at p. 849.) He must demonstrate a full commitment to parental responsibilities within a short time after he learns the biological mother is pregnant with his child. (*Adoption of Michael H.* (1995) 10 Cal.4th 1043, 1060.) He must also demonstrate a willingness to assume full custody of the child. (*Kelsey S.*, at p. 849.)

The biological father has the burden to establish the facts that show he is a presumed father under the *Kelsey S.* standard. (*Adoption of O.M.* (2008) 169 Cal.App.4th 672, 679-680.) In reviewing whether Senior could have met this burden had he requested presumed father status, we utilize the substantial evidence test. (*Adoption of Arthur M.* (2007) 149 Cal.App.4th 704, 717.)

The record shows Senior could not have sustained his burden. His criminal act of battering Elisa caused his incarceration and resultant inability to act as a parent to Junior He did not claim he supported Elisa during her pregnancy, tell anyone he is Junior's father, do anything else to claim Junior as his own, or take on any duties of a father. Completing parentage inquiry questionnaire forms and seeking reunification services do

not constitute timely efforts to fulfill his parental responsibilities. This record would not have supported a finding that he is Junior's presumed father.

### III

Senior asserts that although he was limited by his incarceration, he would like his relationship with Junior to continue and suggests the court erred by not applying the beneficial parent-child relationship exception of section 366.26, subdivision (c)(1)(B)(i), to termination of parental rights and adoption.

If the court finds by clear and convincing evidence that a child is adoptable, it becomes the parent's burden to show termination of parental rights would be detrimental to the child because a specified statutory exception exists. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 574.) Under the exception found in section 366.26, subdivision (c)(1)(B)(i), the parent is required to show termination would be detrimental in that "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."

In reviewing whether there is sufficient evidence to support the trial court's finding, the appellate court reviews the evidence most favorably to the trial court's order, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order. (*In re Autumn H., supra*, 27 Cal.App.4th at p. 576.)

Senior's incarceration prevented him from regularly visiting Junior, and he declined to have Junior brought to the jail for visits. He was supplied with a telephone card so he could make telephone calls from jail, but there was no evidence he attempted to maintain contact by calling Junior's caregivers. After Senior's release, he and Junior

7

had one visit.  Junior was eight months old by this time and he cried intermittently during the visit, smiling when he saw his caregiver and the social worker.  There was no showing that Senior shared a beneficial parent-child relationship with Junior and no showing they had a relationship so beneficial that it would promote Junior's well-being more than the benefits he would gain from being adopted into a permanent adoptive home.  Senior has not shown the court erred by not finding the beneficial parent-child relationship exception applied to prevent termination of parental rights and adoption.

DISPOSITION

The orders are affirmed.

McDONALD, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.

8