Filed 8/18/23  In re G.M. CA2/5

See dissenting opinion

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re G.M., a Person Coming Under the Juvenile Court Law. | B326194 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>B.M.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP05713) |

APPEAL from an order of the Superior Court of Los Angeles County, Hernan D. Vera, Judge.  Conditionally reversed with directions.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

Mother[1] appeals from the November 2, 2022 order terminating parental rights to her son (minor) under Welfare and Institutions Code section 366.26.[2]  Mother's sole contention on appeal is that the juvenile court erroneously failed to ensure compliance with the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (§ 224 et seq.).  We conditionally reverse and remand the matter solely for the court to ensure the Los Angeles County Department of Children and Family Services (Department) complies with ICWA and related California statutes by asking available maternal relatives about minor's possible Indian ancestry.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

The Department filed a petition under section 300, subdivision (b), based on mother's failure to provide appropriate

---

[1] Minor's alleged father is not a party to the current appeal.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3] Because the sole issue on appeal concerns the juvenile court's and the Los Angeles County Department of Children and Family Service's (the Department) compliance with ICWA and related California law, we limit our recitation of facts to those

care to minor, who was three months old, and mother's excessive use of prescription medication. At the October 29, 2020 detention hearing, the court appointed counsel for mother and minor. Mother's responses on a parentage questionnaire identified N.S. as minor's father, but also indicated that: N.S. was not present at minor's birth; he and mother were not married or living together; and he had not signed the birth certificate; he had not taken any other steps to acknowledge paternity. Mother did not have N.S.'s contact information on hand. Based on mother's parentage form, the court found N.S. to be an alleged father. The only phone number mother had for N.S. was a disconnected number and mother was not in contact with any of N.S.'s family members. She believed N.S. was homeless. Mother knew N.S. had Facebook, but had blocked him. The court directed the Department to notify N.S. through the number provided by mother, and if that was not possible, to conduct a due diligence search to locate N.S. and report on its efforts in the next report to the court. The court also directed an attorney in the courtroom to reach out to the father through the number mother had provided.

Mother submitted an ICWA-010 form stating she did not have any known Indian ancestry, but she asserted in court that father might have Cherokee ancestry. The court found no reason to know ICWA was applicable to minor.

According to the Department's jurisdiction and disposition report, minor was placed with maternal grandparents. Maternal grandmother reported that N.S. left when mother was three months pregnant with minor, and the grandparents had not seen

relevant to that compliance issue, except as is necessary for context.

or heard from him since.  A due diligence report was initiated for N.S. in February 2021, identifying four potential addresses in Southern California, and the Department was awaiting responses.

A declaration of due diligence prepared in March 2021 summarized the steps taken by the Department to locate and contact N.S., including searches of several state and federal databases.  The Department had N.S.'s first and last names, date of birth, and the last four digits of his social security number.  Mailed notices to several possible addresses did not result in any response; and attempts to locate N.S. based on different phone numbers obtained during the search were unsuccessful.

On June 23, 2021, the juvenile court noted that N.S.'s whereabouts were unknown and the due diligence was complete.  It sustained the allegations of the first amended petition.  On July 29, 2021, the court ordered reunification services for mother, but denied services to father because he was only an alleged father.  By January 31, 2022, mother's whereabouts were unknown.  The court terminated mother's reunification services and scheduled a hearing under section 366.26.

An updated declaration of due diligence, prepared in May 2022, summarized additional information about N.S.'s possible whereabouts and contact information, as well as the Department's efforts to notify N.S. of the dependency proceedings.  Two attempts to contact N.S. by e-mail resulted in no response.  On May 31, 2022, the juvenile court found  due diligence for N.S. was complete, and ordered the Department to provide notice by publication.  The court also authorized service of notice on mother through her attorney.  The Department filed an updated declaration of due diligence in August 2022, with

4

additional addresses ruled out. N.S.'s whereabouts remained unknown.

At the section 366.26 hearing on November 2, 2022, the juvenile court found notice proper as to mother and N.S., and terminated parental rights over minor. Mother was not present, but her counsel stated: "On behalf of mother, I will object to termination of her parental rights; however, I don't have direction from her at this time." Mother filed a notice of appeal on January 3, 2023.

## DISCUSSION

*Authority to Appeal and Forfeiture*

The Department contends mother's appeal should be dismissed because it was not filed at her direction. Mother's absence from the section 366.26 hearing and the fact that her attorney filed the notice of appeal on the last possible day do not support any reasonable inference that the appeal was unauthorized. Rather, "the attorney signing a notice of appeal in a dependency case is impliedly representing to this court that his or her client has authorized the appeal." (*In re Helen W.* (2007) 150 Cal.App.4th 71, 79.)

The Department also seeks dismissal of the appeal because mother did not object in the trial court to the adequacy of the Department's efforts to search for D.S. A parent's failure to raise ICWA compliance to the juvenile court's attention does not waive the issue on appeal. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 13; *In re B.R.* (2009) 176 Cal.App.4th 773, 779.) When one parent has possible Indian ancestry and the other does not, the non-Indian parent still has standing to raise the issue of ICWA compliance

5

on appeal. (*In re O.C.* (2016) 5 Cal.App.5th 1173, 1180, fn. 5.) The fact that mother did not object to the sufficiency of the Department's efforts to locate N.S. does not waive her right to raise an ICWA challenge.

*ICWA Inquiry*

Mother contends on appeal that the Department did not adequately inquire into the possibility that minor was an Indian child. Specifically, mother argues the Department's efforts to locate N.S. were inadequate, and that the duty of initial inquiry required the Department to ask maternal grandparents about possible Indian ancestry. We disagree that ICWA required the Department to take additional steps to locate N.S., but we agree that the Department fell short of its obligations under section 224.2, subdivision (b), when it failed to ask maternal grandparents about possible Indian ancestry.

A. Applicable Law and Standard of Review

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Isaiah W., supra*, 1 Cal.5th at p. 7.) Both ICWA and California law define an " 'Indian child' " as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian

6

tribe. (25 U.S.C. § 1903(4); § 224.1, subds. (a) & (b); see *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 783.)

California statutory law incorporates the requirements of ICWA, and imposes some additional requirements as well. (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741–742.) State law imposes on the Department a first-step inquiry duty to "interview, among others, extended family members and others who had an interest in the child." (*In re H.V.* (2022) 75 Cal.App.5th 433, 438; see § 224.2, subd. (b).) Federal regulations explain that the term "[e]xtended family member is defined by the law or custom of the Indian child's Tribe or, in the absence of such law or custom, is a person who has reached age 18 and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 C.F.R. § 23.2 (2017).) The duty of initial inquiry includes making a meaningful effort to interview available relatives. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552–553.) When there is "reason to believe that an Indian child is involved in a proceeding," further inquiry is also required. (§ 224.2, subd. (e); *In re T.G.* (2020) 58 Cal.App.5th 275, 290, fn. 14.) "We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence." (*In re H.V.*, at p. 438.)

B. <u>No Inquiry Obligation for Alleged Father</u>

As an alleged father, N.S. does not qualify as a "parent" for purposes of ICWA. ICWA defines a parent as " 'any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child . . . . It does not include the

unwed father where paternity has not been acknowledged or established.' " (*In re C.A.* (2018) 24 Cal.App.5th 511, 520.) "Moreover, because the ICWA does not provide a standard for the acknowledgment or establishment of paternity, courts have resolved the issue under state law." (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 708.) Thus, in California, an alleged father may acknowledge or establish paternity through blood testing (Fam. Code, § 7551) or by voluntarily signing a declaration of paternity filed with the child's birth certificate (Fam. Code, § 7571, subd. (a)). (*In re Daniel M.,* at pp. 708–709.) Section 316.2 provides additional facts a dependency court may consider in determining that a man should be considered a "presumed" father, rather than an alleged father. (See § 316.2, subd. (a) [listing factors such as man's cohabitation with child's mother at the time of conception or birth, or man's payment or promises of support with respect to the child].)

Because there was no evidence to elevate N.S.'s status beyond a mere alleged father, the Department did not have an obligation under ICWA or related California law to locate him to ask him about mother's assertion he may have had Cherokee ancestry. N.S. never appeared in the dependency case and took no action to prove a biological connection with minor.

Mother argues that N.S. never had an opportunity to prove his biological connection to minor, because he did not have notice of the case. We reject mother's argument on two grounds. First, we will not consider arguments made for the first time in a reply brief. (See *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 255 [insufficient to raise issue in reply brief only].) Second, we reject any argument that ICWA imposes a higher duty than the due process efforts accorded to any parent under California

8

dependency law. (See *In re Justice P.* (2004) 123 Cal.App.4th 181, 188 ["[d]ue process requires that a parent is entitled to notice that is reasonably calculated to apprise him or her of the dependency proceedings and afford him or her an opportunity to object"]; *In re J.R.* (2022) 82 Cal.App.5th 569 [father has standing to raise violation of mother's due process rights].) Here, there was substantial evidence of the Department's efforts to locate N.S., mother has not asserted a due process violation of father's rights, and the juvenile court found that due diligence search efforts had been made. On these facts, we find no violation of ICWA's inquiry obligations.

C. <u>Initial Inquiry for Maternal Grandparents</u>

The Department concedes there is no evidence that it asked maternal grandparents about minor's possible Indian ancestry. In making that factual concession, the Department states it does not oppose an order remanding the case with directions to ask maternal grandparents about minor's possible Indian ancestry, pointing to the goal of expediting permanency for minor. However, the Department's brief does not concede legal error, and cites to *In re Robert F.* (2023) 90 Cal.App.5th 492, 500, review granted (July 26, 2023, S279743) 2023 WL 4777174, which held that the duty to inquire of extended relatives does not apply when a minor is detained pursuant to a warrant under section 340. While both *In re Robert F.* and *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted (July 26, 2023, S280572) 2023 WL 4772422, may still be cited as persuasive authority, in light of the Department's factual concession and the conflicting holding in *In re Delila D.* (2023) 93 Cal.App.5th 953, at *8, we decline to

consider the question of whether the method of minor's detention impacts the scope of the Department's inquiry duties. Instead, we find that the court erred in finding ICWA inapplicable, as the court proceeded in the absence of any evidence that the Department asked available extended family members about the possibility that minor has Indian ancestry. (See, e.g., *In re H.V.*, *supra*, 75 Cal.App.5th at p. 438 [prejudicial error when Department fails to discharge its first step duty of inquiry].)

## DISPOSITION

The juvenile court's November 2, 2022 order terminating parental rights under Welfare and Institutions Code section 366.26 is conditionally reversed and remanded for proceedings required by this opinion. The court shall order the Department to make reasonable efforts to interview available extended relatives, including maternal grandparents, about the possibility of the minor's Indian ancestry and to report on the results of the Department's investigation. Nothing in this disposition precludes the court from ordering additional inquiry of others having an interest in minor. Based on the information reported, if the court determines that no additional inquiry or notice to tribes is necessary, the order terminating parental rights is to be reinstated. If additional inquiry or notice is warranted, the court shall make all necessary orders to ensure compliance with ICWA and related California law.

NOT TO BE PUBLISHED.

MOOR, J.

10

I concur:

KIM, J.

In re G.M.
B326194


BAKER, Acting P. J., Dissenting



I would affirm because substantial evidence supports the juvenile court's finding that the Indian Child Welfare Act (ICWA) does not apply.  (*In re A.C.* (2022) 86 Cal.App.5th 130, 132 (dis. opn. of Baker, J.); *In re Ezequiel G.* (2022) 81 Cal.App.5th 984; *In re H.V.* (2022) 75 Cal.App.5th 433, 439 (dis. opn. of Baker, J.).)



BAKER, Acting P. J.