Filed 1/27/25  In re O.T. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re O.T. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br>       Plaintiff and Respondent, <br><br>       v. <br><br> V.T., <br><br>       Defendant and Appellant. | D084943 <br><br> (Super. Ct. Nos. J521167B-C) |

APPEAL from an order of the Superior Court of San Diego County, Bonnie Dumanis, Judge.  Conditionally reversed and remanded for further proceedings.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Evangelina Woo, Deputy County Counsel, for Plaintiff and Respondent.

## I.

## INTRODUCTION

V.T. (Mother) appeals from the juvenile court's order terminating her parental rights to her adoptive children O.T. and A.T. under Welfare and Institutions Code section 366.26.[1]  Mother contends the San Diego County Health and Human Services Agency (the Agency) did not comply with its inquiry duties under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; ICWA) and section 224.2, subdivisions (b) and (c) in two respects.  First, Mother maintains that the Agency failed to conduct an adequate initial inquiry into the children's possible Indian heritage through their biological relatives.  Second, Mother asserts the Agency was obligated to pursue "further inquiry" regarding her family—the children's adoptive family— because the Agency's initial inquiry of members of her family provided information suggesting the children could be Indian children through their adoption.

The Agency concedes it did not comply with its duty of initial inquiry in connection with the children's biological family and agrees a conditional reversal with a limited remand is appropriate.  However, the Agency contends it met its inquiry obligations in connection with the children's adoptive family.

We agree with the Agency with respect to the sufficiency of its ICWA inquiry regarding Mother's family.  However, we accept the Agency's

---

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

2

concession with respect to its failure to comply with its duty of initial inquiry in connection with the children's biological family members. Accordingly, we conditionally reverse the order terminating parental rights and remand for the limited purpose of requiring the Agency and juvenile court to comply with the initial inquiry requirements of ICWA and section 224.2 in connection with the children's biological family members.

## II.

## BACKGROUND[2]

Mother adopted O.T., A.T., and Aa.T. from foster care in 2019 and 2020.[3] Mother is a nonrelated extended family member (NREFM) of the children's biological family. Mother denied having Native American ancestry when asked by the investigating social worker. On January 17, 2023, the Agency filed ICWA-010 forms along with the children's petitions in which the Agency indicated Mother was asked about Indian ancestry and denied such ancestry.

At Mother's first appearance on January 18, 2023, the juvenile court inquired about the possibility Mother had Native American ancestry. In response, Mother stated, "I've been told I do have [Indian ancestry], but I've never researched or looked into it any further." She explained that her father, the children's adoptive maternal grandfather, had indicated possible Indian ancestry in his family. However, when Mother was asked whether there might be others who might know about her Indian ancestry, Mother said, "Not that I know of. It would be something I would have to

---

[2] Because the only issues on appeal relate to the adequacy of the ICWA inquiry, we summarize the facts briefly, focusing on the ICWA inquiry.

[3] Aa.T. is not a subject of this appeal but is a biological sibling of O.T. and A.T.

investigate —further ask around.  I just never investigated it"  Mother agreed to provide any new or additional information about Indian ancestry to her counsel, the social worker, or the court.  The juvenile court made a finding that Mother may have Indian ancestry.

Mother filed an ICWA-020 form on January 19, 2023.  She checked the box next to "I have no Indian ancestry as far as I know," but hand wrote on the form:  "My father did say we have Indian heritage but never named a tribe.  It was comments made in reference to our bone structure.  He is deceased.  I know of no family members who would have any additional information."

At the continued detention hearing, the juvenile court asked Aa.T. if she had Indian ancestry, and she responded, "No."  The children's adoptive maternal aunt M.O. said she was not aware of any Indian ancestry in her family.  Aa.T. and M.O. were both advised by the juvenile court to provide any additional or different information to the social worker, the juvenile court, or minor's counsel.  The juvenile court then ordered the Agency to investigate whether the children are Indian children.

A social worker inquired of Mother's family regarding possible Native American heritage.  The children's adoptive maternal grandmother D.O. told the social worker the family had Native American heritage through her mother, K.L., who is deceased.  D.O. did not know the name of the tribe, and when the social worker asked if there were any other relatives who might have information, she stated she "would need to make some calls."  Over a week later, the social worker asked if D.O. had any new or additional information regarding possible Native American heritage, and she said she did not have new information or the names of additional family members the Agency could contact.  The social worker also reported that when she told

4

M.O. that D.O. had indicated "there may be Native American heritage," M.O. responded "that there is no proof [of such heritage], but the [adoptive] maternal grandfather 'looks like a full blown Indian.' " M.O. denied knowing the name of a possible tribe.

At a pretrial status conference in March 2023, the juvenile court deferred making an ICWA finding and directed the Agency to inquire with Aa.T. and O.T. In a June 2023 addendum report, the social worker reported asking O.T. about any knowledge he might have of possible Indian heritage, but he did not seem to understand the questions and provided no response.[4]

At the contested jurisdiction and disposition hearing in December 2023, the parties stipulated to testimony that the social worker's supervisor conducted ICWA inquiry with (1) the children's adoptive sister, H.T.M.; (2) H.T.M.'s father; and (3) two NREFM caregivers to O.T. None of these individuals had information to suggest the children are Native American. The social worker testified that she had requested the children's dependency and adoption files from Los Angeles County, but her requests had been ignored. At the conclusion of the hearing, the juvenile court made a finding ICWA did not apply, without prejudice.

At the August 7, 2024 section 366.26 hearing, the juvenile court found ICWA did not apply, terminated Mother's parental rights, and referred the children to the Agency for a permanent plan of adoption.

---

[4] O.T. was diagnosed with autism and fetal alcohol syndrome, and was receiving services through the county's regional center to assist him in independently completing his daily living activities.

## III.

## DISCUSSION

Mother argues substantial evidence does not support the trial court's finding that ICWA does not apply because the Agency failed to comply with its duties to inquire whether the children are Indian children. First, Mother asserts the Agency failed to conduct any initial inquiry of the children's biological relatives. As Mother maintains, the Agency had access to information about the children's biological relatives because the children had been placed for adoption with Mother through a prior dependency case in Los Angeles, so information on biological family members would have been accessible to the Agency. Separately, Mother also contends that the Agency's duty of "further inquiry" was triggered because statements made by Mother and two of her relatives gave the Agency "reason to believe" the children might be Indian children.

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) California subsequently enacted its own statutes specifying the procedures the Agency and juvenile courts are required to follow before making placement decisions in determining whether a child is a Native American child. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*In re D.S.*).) Under these statutes, during dependency proceedings the juvenile court and the Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a).)

"This continuing duty [of inquiry] can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*In re D.F.*).)

6

The initial duty of inquiry extends to asking parents, legal guardians, extended family members and others who have an interest in the child. (§ 224.2, subd. (b).) In the second phase, "if that initial inquiry creates a 'reason to believe'[5] the child is [a Native American] child, then the Agency 'shall make further inquiry regarding the possible [Native American] status of the child and shall make that inquiry as soon as practicable.' " (*In re D.S., supra*, 46 Cal.App.5th at p. 1052, italics omitted.) In the third stage, if further inquiry results in a reason to know a child is a Native American child, the notice requirements of section 224.3 apply. (*Ibid*.) The failure to engage in a sufficient inquiry requires conditional reversal. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125 (*In re Dezi C.*).)

A. *We accept the Agency's concession of ICWA error requiring a conditional reversal to allow for ICWA inquiry of the children's biological family*

Mother contends the Agency failed to conduct adequate initial inquiry of the children's biological family members to determine whether the children are or may be Indian children under section 224.2, subdivision (a). According to Mother, the children's biological family members constitute "extended family" for purposes of ICWA inquiry. The Agency concedes this point, agreeing that under the circumstances presented here, it has an ICWA inquiry obligation to make efforts to locate and contact the children's biological family members to seek information as to whether the children

---

5 The Legislature has defined "reason to believe" as having "information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of" a ground for having reason to know a child is an Indian child, as those grounds are enumerated in section 224.2, subdivision (d). (§ 224.2, subd. (e)(1).)

may be Indian children.  We accept the Agency's concession, and therefore conclude that conditional reversal and remand for the limited purpose of allowing the Agency to conduct adequate ICWA inquiry of the children's biological family members is appropriate.  (See *In re Dezi C.*, *supra*, 16 Cal.5th at p. 1125.)

Upon a conditional reversal, the Agency is to make additional inquiry and documentation efforts consistent with its duties, and the court shall hold a hearing to determine whether, in light of the outcome of that inquiry, ICWA applies.  "If the juvenile court determines the inquiry is proper, adequate, and duly diligent and concludes that ICWA does not apply, any inquiry error is cured, and the judgment would be reinstated.  [Citation.]  In contrast, if the inquiry reveals a reason to know the dependent child is an Indian child, the tribe has been notified [citations], and the tribe determines the child is a member or citizen, or eligible for membership or citizenship, of an Indian tribe [citations], ICWA applies, and the judgment must be reversed."  (*In re Dezi C., supra*, 16 Cal.5th at pp. 1137–1138.)

B.     *The Agency complied with its ICWA inquiry obligations with respect to its inquiry of the children's adoptive family*

Because the matter will be remanded for further inquiry, we feel it necessary to address Mother's separate challenge to the adequacy of the Agency's inquiry in connection with the children's adoptive family in order to provide guidance to the Agency and the court.  According to Mother, three statements— one each made by Mother, the children's adoptive maternal grandmother, and the children's adoptive maternal aunt—gave the Agency "reason to believe" (§ 224.2, subd.(e)) the children are Indian children through adoption, thereby triggering the Agency's duty of "further inquiry" in connection with their adoptive family (§ 224.2, subd. (e)(2)).  The Agency

8

maintains that its inquiry of the children's adoptive family was adequate and proper, and that no error with respect to the adoptive family members has been shown. We agree with the Agency on this point.

As an initial matter, the Agency concedes that it was required to conduct ICWA inquiry with the children's adoptive family, despite the lack of a biological relationship, as ICWA's definition of an Indian child does not exclude the possibility that a child might be determined to be an Indian child through adoption. (See *In re B.R.* (2009) 176 Cal.App.4th 773, 783 [requiring notice to tribe because grandchildren "by adoption of an ancestor with Indian blood" were not "automatically exclude[d]" from ICWA's definition of "Indian child"].)

As part of its duty of initial inquiry, the Agency made ICWA inquiry of Mother, the children's adoptive maternal grandmother, and their adoptive maternal aunt. Mother asserts that "[t]he combined statements of the[se] adoptive family members constituted reason to believe the children, although adopted, were Indian children, eligible for membership in a tribe, requiring further inquiry." Again, the duty of "further inquiry" under section 224.2, subdivision (e)(2), arises only when there is a "reason to believe that an Indian child is involved [or, under California Rules of Court, rule 5.481(a)(4), 'may be involved'] in a proceeding." (§ 224.2, subd. (e).) A "*reason to believe* a child involved in a proceeding is an Indian child" exists when "the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (§ 224.2, subd. (e)(1), italics added.) " 'When that ['reason to believe'] threshold is reached, the requisite "further inquiry' 'includes: (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State Department

9

of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.' " (*In re J.S.* (2021) 62 Cal.App.5th 678, 686.)

The adoptive family members made three statements that Mother contends gave the agency "reason to believe" (§ 224.2, subd. (e)) the children are Indian children. First, although Mother initially disclaimed having any Native American heritage, on her ICWA form, she marked the box "I have no Indian ancestry as far as I know," but also handwrote: "My father did say we have Indian heritage but never named a tribe. It was comments made in reference to our bone structure. He is deceased. I know of no family members who would have any additional information." And when asked a few weeks later whether she had new information on the matter, she said, "No."

Second, when asked about Native American ancestry by a social worker, the adoptive maternal grandmother indicated she thought she had Native American heritage through her mother's side of the family. However, she reported that her mother was deceased and she did not know what tribe with which her mother might have had some affiliation. When the Agency asked whether she had the names of other family members who might have information about her mother's tribal connections, the adoptive maternal grandmother said she would "need to make some calls." Almost two weeks later, the Agency followed up and asked if the maternal adoptive grandmother had any additional information about possible Native American heritage, or if she could provide the names of other relatives to contact about it, but she said she had no additional information for the Agency.

10

Third, the social worker informed the children's adoptive maternal aunt that her mother had indicated the family may have Native American heritage. In response, the adoptive maternal aunt said that "there was no proof [of such heritage] but the [adoptive] maternal grandfather 'looks like a full blown Indian.'" When asked, she had no information on the name of a possible tribe.

According to Mother, "all these statements gave the court and the Agency 'reason to believe' that the children were Indian children, but there is no indication that the Agency followed up by contacting the BIA, or any tribes to further investigate. Under the federal regulations and the California statutes related to the ICWA, the duty of further inquiry was triggered, requiring the social worker to contact the BIA." We disagree.

An agency is only obligated to make "a good faith effort to gather information about the children's membership status or eligibility" (*In re D.F., supra*, 55 Cal.App.5th at p. 570) and it need not " 'cast about' for information or pursue unproductive investigative leads." (*In re D.S., supra*, 46 Cal.App.5th at p. 1053.) None of the statements by Mother's family provide any indication as to a tribe or set of possible tribes in which Mother might be eligible for membership. Moreover, these statements consist of speculation, with little verifiable information. Mother's statement about her father saying they have Native American background in connection with discussions about the family's "bone structure" is vague and provides no useful information, and Mother offered no other family members who might be able to provide relevant information. And, the comment by the children's adoptive maternal aunt, in which she stated that the adoptive maternal grandfather " 'looks like a full blown Indian,' " is insufficient to support a

11

reasonable belief of Indian heritage. She also offered no other family members who could provide additional information.

The adoptive maternal grandmother's assertion that her mother may have had Native American heritage is similarly vague and unsupported by any useful information as to whether the children's adoptive family has Native American ancestry. In the complete absence of a tribe or set of possible tribes, or the identification of other family members who might be able to provide such information, a family member's mere assertion of possible tribal affiliation is not enough to require additional further inquiry by the Agency. (See *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1468 [mother's information was "too speculative" to suggest child was an Indian child where mother indicated "she may have Indian heritage through her father" but she "could not identify the particular tribe or nation and did not know of any relative who was a member of a tribe" and did not provide other relatives "who could reveal more information."].)

Moreover, it is difficult to ascertain how the Agency could undertake "further inquiry" of the children's adoptive family. Mother argues that the Agency should have contacted the Bureau of Indian Affairs (BIA) "or any tribes to further investigate." But one must ask, what information could the Agency provide to the BIA, and which tribes should the Agency have contacted? There is no indication in ICWA or California statutes that an Agency must reach out to all federally registered tribes to "investigate" family claims of possible Indian ancestry, generally. In addition, without more particularized information, the Agency would have no basis for contacting the BIA. At the "further inquiry" stage, California law requires an agency to "[c]ontact[ ] the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact

12

information of the tribes in which the child may be a member or citizen, or eligible for membership or citizenship in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility." (§ 224.2, subd. (e)(2)(B).) The statute presupposes that there is information linking the child and/or the child's family to a particular tribe or constellation of tribes. In the absence of such information, further investigation is effectively impossible: "Without the identity of a tribe, let alone a federally recognized one, or at least a specific geographic area of possible ancestry origin, the Bureau of Indian Affairs (BIA) could not have assisted the Department in identifying the tribal agent for any relevant federally recognized tribes." (*In re J.S., supra*, 62 Cal.App.5th at p. 689.)

We therefore conclude the Agency had no "reason to believe" the children are Indian children through their adoptive family, and that as a result, the Agency had no obligation to contact the BIA or any tribes under the "further inquiry" duty imposed by section 224.2, subdivision (e) in connection with adoptive family members. Thus, the Agency's ICWA inquiry failure relates solely to the children's biological family.

13

IV.

DISPOSITION

The juvenile court's order terminating Mother's parental rights is conditionally reversed. The matter is remanded to the juvenile court with directions that the Agency comply with the inquiry provisions of ICWA and section 224.2 in connection with the children's biological relatives. If, after the Agency satisfactorily complies with ICWA's obligations in this regard and the court finds that no ICWA notice is required to be given, it shall reinstate the order terminating Mother's parental rights. If, after satisfactory inquiry regarding the children's biological relatives, the court finds that ICWA notice is required, the Agency shall comply with its ICWA notice obligations and the court shall proceed accordingly. Should the parties wish to expedite this process, they may stipulate to the immediate issuance of the remittitur (see Cal. Rules of Court, rule 8.272(c)(1)).


IRION, Acting P. J.

WE CONCUR:


BUCHANAN, J.


CASTILLO, J.

14