Filed 10/17/22 In re J.R. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.R., a Person Coming Under the Juvenile Court Law. | B318587 (Los Angeles County Super. Ct. No. 18CCJP07406-A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> L.R., <br><br> Defendant and Appellant. | ORDER MODIFYING OPINION [CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on October 7, 2022, be modified as follows:

1. On page 2, the first sentence is modified to delete the word "dispositional" so the sentence reads:

L.R. (Mother) appeals from the order terminating her parental rights to her daughter J.R.

2. On page 2, in the last sentence of the first paragraph, the word "dispositional" is replaced with "termination of parental rights" so the sentence reads:

We affirm the termination of parental rights order.

3. On page 11, in the sentence under the heading DISPOSITION, the word "dispositional" is replaced with "termination of parental rights" so the disposition reads:

The termination of parental rights order is affirmed.

This modification changes the judgment.

LUI, P. J.          CHAVEZ, J.          HOFFSTADT, J.

2

Filed 10/7/22  In re J.R. CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re J.R., a Person Coming Under the Juvenile Court Law. | B318587<br>(Los Angeles County Super. Ct. No. 18CCJP07406-A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>L.R.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Kristen Byrdsong, Judge Pro Tempore.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

L.R. (Mother) appeals from the dispositional order terminating her parental rights to her daughter J.R.  Mother contends the order should be reversed because the Los Angeles County Department of Children and Family Services (DCFS) failed to conduct an adequate inquiry under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related state law (Welf. & Inst. Code, § 224.1[1]).  Any alleged error is harmless.  There is "no reason to believe" the inadequate inquiry claimed by Mother would lead to a different outcome. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578.)  We affirm the dispositional order.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Background Summary[2]

Mother's daughter J.R. was born in November 2018.  Mother already had two sons, one of whom was Jordan.  He was born in 2016.  Jordan and J.R. had different fathers.  In October 2017, a section 300 petition was sustained on behalf of Jordan.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Because the only issues on appeal are whether DCFS failed to comply with its statutory duties of inquiry and, if so, what remedy is appropriate, we give only a brief summary of the background facts not relevant to those issues.

He was declared a juvenile court dependent. Parental rights were later terminated, and Jordan was adopted. The older son was in foster care with a maternal great aunt in Texas before her death in January 2022.

On November 16, 2018, DCFS filed a section 300 petition on behalf of newborn J.R. The petition alleged J.R. was at risk of serious physical harm due to Mother's domestic violence, marijuana abuse, and failure to reunify with Jordan. J.R. tested positive for marijuana at birth.

An amended dependency petition filed on January 9, 2019, alleged Mother had engaged in another domestic violence incident.

Mother identified more than one man as J.R.'s father, but later settled on Father. She did not know where Father could be found, but she believed he was incarcerated.

The juvenile court declared J.R. a dependent of the court and ordered her placed in foster care. The court ordered Mother to participate in reunification services. No services were ordered for Father because his whereabouts were unknown.

At the October 2019 six-month review hearing, the court terminated reunification services for Mother.

Father made his first court appearance in March 2020. Later, a court-ordered paternity test confirmed he was J.R.'s biological father.

Mother and Father each filed a section 388 petition, which the court denied. The section 366.26 hearing was continued numerous times due to the pandemic and notice issues.

On February 18, 2022, the court terminated parental rights and ordered J.R. adopted by her foster parent. Mother timely appealed.

## II.  ICWA Inquiry

Attached to J.R.'s section 300 petition was form ICWA-010(A).  The form showed an in-person Indian child inquiry of Mother was made on November 13, 2018.  Mother told a DCFS social worker that Father was a member of the Apache tribe.  Mother had no further information concerning Father's Indian ancestry.

In its report for the detention hearing, DCFS stated the juvenile court had found ICWA did not apply in Jordan's 2017 dependency case.

At the November 19, 2018 detention hearing, Mother submitted a Parental Notification of Indian Status form (form ICWA-020).  Mother had checked the box on the form indicating, under penalty of perjury, "I may have" Apache Indian ancestry.  After reviewing the form, the juvenile court directed DCFS to investigate Mother's claim.

A second form ICWA-010(A) was completed on November 29, 2018.  Mother confirmed Father's Apache Indian ancestry to a social worker and stated she had no Indian ancestry.

J.R.'s extended maternal family members known to DCFS were the maternal great aunt, who lived in Texas, the maternal grandfather and maternal grandmother.  The social worker spoke to the maternal great aunt on November 14, 2018.  Nothing in the DCFS reports suggests the social worker questioned maternal great aunt about her possible Indian ancestry.  The maternal great aunt died during these proceedings.  The maternal grandmother and grandfather had died years earlier.

On November 28, 2018, DCFS sent ICWA notices (ICWA-030 form) to eight Apache tribes, the Bureau of Indian

4

Affairs, and the Secretary of the Interior and received responses over the next two months. The notices contained J.R.'s identifying information, limited information about Mother and Father, proposed tribal affiliation, and no information about paternal and maternal relatives.

Four of the tribes responded to DCFS that J.R. was not eligible for enrollment and was not defined as an Indian child. A fifth tribe responded that DCFS had failed to provide sufficient information about the parents, grandparents, and great grandparents.

At the March 4, 2019 jurisdiction hearing, the juvenile court found ICWA did not apply. The court ordered the parents to provide any new information regarding ICWA. Father had been identified and located as the alleged father, but he had not yet appeared in court.

The March 11, 2020 section 366.26 hearing was Father's first appearance. Father told the juvenile court that he had Indian ancestry but did not know which tribe. J.R.'s paternal aunt (Father's sister) was also in the courtroom. She explained her family had 10 percent Indian ancestry based on "[a] DNA ancestry test." The aunt acknowledged neither she nor any family member was a registered member of any tribe. The court ordered DCFS to further investigate whether ICWA applied and continued the hearing.

J.R.'s extended paternal family members known to DCFS were the paternal aunt, paternal cousin, and paternal grandmother. The social worker's reports do not show DCFS asked the paternal cousin or paternal grandmother about Indian ancestry.

5

On March 23, 2020, DCFS resent the identical set of ICWA notices to all Apache tribes, the Bureau of Indian Affairs, and the Secretary of the Interior. Any responses from the tribes are not part of the record.

DCFS submitted a last-minute information report for the court stating Father denied having Indian ancestry during February 24 and April 19, 2020 interviews with DCFS.

At the May 4, 2021 section 366.26 hearing, DCFS and Father's counsel advised the juvenile court that Father had apparently not provided a Parental Notification of Indian Status form. The court accepted the offer of Father's counsel to contact Father and ordered DCFS to make appropriate inquiries regarding ICWA. The hearing was continued. Father's ICWA-020 form is not in the record.

DCFS submitted a last-minute information report for the August 2, 2021 section 366.26 hearing. The report stated a DCFS social worker was unable to reach Father by phone or through his former probation officer to ask about Father's Indian ancestry. On May 19, 2021, the social worker also asked Mother about any tribal affiliation. Mother said J.R. had no Indian ancestry.

In its status review report for the section 366.36 hearing, DCFS stated ICWA did not apply, noting that Mother had denied Indian ancestry for J.R. on May 19, 2021.

At the August 2, 2021 hearing, the juvenile court found "there's no reason to believe ICWA applies to this case." The court ordered the parents to keep their counsel, DCFS, and the court apprised of any new information possibly relating to ICWA.

After six months of further proceedings, parental rights were terminated.

DISCUSSION

## I.  Applicable Law

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families.  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.)  Under California law adopted pursuant to ICWA, the juvenile court and DCFS have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child."  (Welf. & Inst. Code, § 224.2, subd. (a).)  However, not all children who claim some Indian ancestry can qualify as Indian children.  (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 888 ["Indian ancestry, heritage or blood quantum, however, is not the test"].)  For purposes of ICWA, an " 'Indian child' " is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); accord, Welf. & Inst. Code, § 224.1, subd. (a) [adopting the federal definition].)

California law has established three distinct duties when implementing ICWA in dependency proceedings.  The first duty, which is at issue here, is the duty to undertake an inquiry.  From DCFS's initial contact with the child and the child's family, section 224.2 imposes "an affirmative and continuing duty" to inquire of all involved persons whether the child may be an Indian child.  (§ 224.2, subd. (a).)  This entails DCFS " 'asking the child, parents, legal guardian, Indian custodian, extended family members,[3] others who have an interest in the child, and the

---

[3] ICWA defines " 'extended family member' " as any person so defined by the law or custom of the Indian child's tribe, or in the absence of such law or custom, "a person who has reached the

party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' (§ 224.2, subd. (b)).)" (*In re A.R.* (2022) 77 Cal.App.5th 197, 204; see also Cal. Rules of Court, rule 5.481(a)(1).) And the juvenile court must inquire at each party's first appearance in the proceedings whether he or she knows or has reason to know that the child is an Indian child. (§ 224.2, subd. (c); see also Cal. Rules of Court, rule 5.481(a)(2).)

Section 224.2 requires further inquiry and formal notice to the tribes (i.e., the second and third ICWA duties) only if there is "reason to believe" or "reason to know" the child is an Indian child as a result of the initial inquiry. (§ 224.2, subds. (d), (e) & (f); 25 C.F.R. § 23.107(c) (2021).)

"We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence." (*In re H.V.* (2022) 75 Cal.App.5th 433, 438.) Where DCFS's initial inquiry is unquestionably erroneous, we assess whether it is reasonably probable the juvenile court's ICWA finding would have been the same had there been no error. (*In re Dezi C., supra,* 79 Cal.App.5th at p. 779, rev.gr.) "For this purpose, the 'record' includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*Ibid.*)

## II. DCFS's Inadequate Initial Inquiry Did Not Result in Prejudicial Error.

Mother contends DCFS failed to meet its initial duty of inquiry by not asking J.R.'s known relatives about possible

---

age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2).)

Indian ancestry. Mother urges the juvenile court's reliance on DCFS's inadequate inquiry resulted in prejudicial error.[4] We disagree.

Although DCFS asked the parents about possible Indian ancestry, the agency did not question the maternal great aunt, paternal grandmother, and paternal cousin, all of whom spoke to DCFS social workers during the proceedings. (§ 224.2, subd. (b); see also Cal. Rules of Court, rule 5.481(a)(1).) This was error. However, we agree with DCFS that any error occasioned by DCFS's insufficient inquiry was harmless.

The record does not provide a reason to believe J.R. is an Indian child within the meaning of ICWA. (*In re Dezi C., supra,* 79 Cal.App.5th at p. 779, rev.gr.) Mother acknowledges that she and Father both repeatedly denied Indian ancestry. Neither parent was adopted such that "their self-reporting of 'no heritage' may not be fully informed." (*Ibid.*) Mother also makes no proffer on appeal that she or Father have any Indian ancestry or tribal affiliation. (See *id.* at pp. 779, fn. 4, 786.) Further, Mother does not dispute that in 2017 the juvenile court found ICWA did not apply to her son Jordan, J.R.'s half sibling. (See *In re Darian R.* (2022) 75 Cal.App.5th 502, 510 [prior juvenile court finding that ICWA was inapplicable to two of three biologic siblings supports same finding as to third sibling in subsequent dependency

---

[4] Mother does not have to be the parent who asserted Indian ancestry to have standing to raise the issue of noncompliance. (See *In re B.R.* (2009) 176 Cal.App.4th 773, 779–780.) "Under [25 United States Code] section 1914, any parent or the Indian child's tribe may petition to invalidate a placement or termination order for failure to comply with ICWA requirements." (*Ibid.*)

proceedings].)  Paternal aunt's assertion of possible Indian ancestry based on a DNA ancestry test "had little usefulness" in determining whether J.R. was an Indian child as defined under ICWA.  (*In re J.S.* (2021) 62 Cal.App.5th 678, 689.)  And she advised the court that no member of the paternal family was registered with a tribe.

Mother suggests DCFS failed to comply with the notice provisions of section 224.2 by sending incomplete ICWA-030 notices to the Apache tribes.  Notice comes into play only if there is a "reason to believe" and/or a "reason to know" the child is an Indian child.  A reason to believe triggers the second ICWA duty of further inquiry.  (§ 224.2, subd. (e).)  That includes contacting the "Bureau of Indian Affairs and the State Department of Social Services" for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership;  and contacting tribes and anyone else that might have information regarding the child's membership or eligibility in a tribe.  (*Id.*, subd. (e)(2)(B).)  A reason to know triggers the duty of formal notice mandated by section 224.3.  Thus, any omissions in the ICWA notices which DCFS elected to send during its initial inquiry are of no consequence.

10

## DISPOSITION

The dispositional order is affirmed.

NOT TO BE PUBLISHED.


                                LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.

11