Filed 1/27/25  In re L.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.G. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>L.T. et al.,<br><br>Defendants and Appellants. | E084417<br><br>(Super.Ct.Nos. J290853, J290854)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Conditionally reversed.

Janelle B. Price, under appointment by the Court of Appeal, for Defendant and Appellant Javier G.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant Laura T.

Tom Bunton, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

## INTRODUCTION

In this dependency matter, Laura T. (Mother) and Javier G. (Father) appeal the juvenile court's order terminating their parental rights over their minor children L.G. and S.G. They contend: (1) that the San Bernardino County Children and Family Services (CFS) failed to appropriately discharge its duty of inquiry under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code, § 224, et seq.)[1] and (2) that the juvenile court violated their right to due process of law by making substantive ICWA findings at hearings where neither the parents nor their counsel were present. CFS disputes the due process claim but does not oppose a conditional reversal because it concedes it did not appropriately discharge its duty of inquiry.

We agree with the parties that a conditional reversal is warranted to allow CFS to comply with its duty of inquiry under ICWA and related California law. Because we conditionally reverse on that basis, we need not reach the parents' due process claim.

## BACKGROUND

Following a report of domestic violence between Father and Mother, CFS undertook an investigation, obtained a detention warrant, and removed one-year-old L.G. and two-year-old S.G. from the home.

On October 12, 2021, CFS filed a dependency petition as to each child alleging failure to protect based on domestic violence between the parents in the presence of the

---

**1** All further undesignated statutory references are to the Welfare and Institutions Code.

2

children, both parents' abuse of controlled substances, Mother's failure to protect the children from Father's substance abuse, and the parents' participation in a prior voluntary family maintenance case.  (§ 300, subd. (b)(1).)

The juvenile court later detained the children from both parents and sustained the petitions, with the exception of the allegation related to the prior voluntary family maintenance case, which the court dismissed.  At the dispositional hearing on January 13, 2022, the court found Father to be the presumed father, declared the children dependents, and ordered family reunification services for both parents.

Following an unsuccessful period of family reunification services, on August 5, 2024, the court terminated parental rights as to both parents and approved the permanent plan of adoption.

Each parent timely filed a notice of appeal.

*Proceedings Related to ICWA Inquiry*

Leading up to the detention hearing, both parents filled out the required parental notification of ICWA status form (ICWA-020).  Father did not claim any Indian ancestry. Mother claimed that she may have Indian ancestry through the Tigua tribe.  Upon inquiry by the court at the detention hearing, Father denied having any Indian ancestry.  Mother again identified the "Tigua or Tigwa" tribe, and said the relation was through the maternal "great[-]grandpa, or something like that."  When interviewed by the social worker for the detention report, Mother identified two maternal aunts, one of whom lived in New Mexico, and one of whom lived locally with the maternal grandmother.  She also reported having maternal great-aunts and great-uncles in Texas, and a maternal great-

3

grandmother who lived in a convalescent home, although the location of the convalescent home was not indicated.

On December 28, 2021, CFS sent a notice of child custody proceeding for Indian child form (ICWA-030) to the parents, the Bureau of Indian Affairs (BIA), and the Pueblo of Isleta tribe in New Mexico.

At the dispositional hearing on January 13, 2022, the court found the children may come under the provisions of ICWA and that noticing requirements had been initiated; however, the court noted the ICWA-030 form that CFS sent as part of its notice was missing information, including the maternal grandmother's date of birth. The court asked CFS to follow-up and submit an update.

On March 28, 2022, CFS filed a declaration of due diligence that stated it had not received any responses to the ICWA notices it sent. A few months later, CFS filed the six-month status review report which stated that on June 10, paternal grandmother Lorena S., and paternal aunt Mayra G. both denied Indian ancestry. No further information was provided in the 12-month status review report. Following its receipt of the 12-month status review report, the court again noted that ICWA-030 form was incomplete and ordered CFS to contact all maternal relatives. At the 12-month review hearing, the court ordered CFS to provide a written update on its ICWA efforts.

On July 24, 2023, CFS filed an additional information report that stated CFS had contacted maternal grandmother Judy T., paternal grandmother Lorena S., and paternal aunt Mayra G., all of whom denied Indian ancestry. CFS had also attempted to call maternal aunt Veronica P. but was unable to reach her. When asked, Mother refused to

4

provide Veronica P.'s contact information. The court received the additional information report into evidence at a hearing on July 26, 2024, and found that ICWA did not apply at that time. Neither parent, nor their counsel were present at the hearing.

At a subsequent hearing on April 5, 2024, the court conducted an ICWA inquiry of all relatives in attendance. Maternal grandmother Judy T. said she has Indian ancestry through her great-grandparents on both sides, and "half" on her father's side in Texas. She stated they were not registered and her grandparents have since passed away. Paternal grandmother Lorena S. and maternal aunt Stephanie T. each said they do not have any Indian ancestry. The court set a notice review hearing for May 29, 2024, to address "further ICWA notice and notice review" for the upcoming section 366.26 hearing.

On May 20, 2024, CFS submitted an addendum report that recapped the ICWA inquiries the court made at the previous hearing, and stated CFS had contacted Father to request contact information for paternal aunt Mayra G. and had contacted Mother to request contact information for maternal aunt Veronica P. The parents would not provide the requested contact information.

At the notice review hearing on May 29, 2024, the court received the addendum report into evidence and found that ICWA did not apply. Neither parent nor their counsel attended the hearing.

## DISCUSSION

Both parents contend CFS failed to appropriately discharge its duty of inquiry under ICWA and related California law by failing to contact the correct tribe and the

5

State Department of Social Services, and by sending an incomplete ICWA-030 form. CFS concedes it did not appropriately discharge its duty of inquiry. CFS acknowledges it did not contact the correct tribe, and also notes there are additional maternal relatives who live in Texas that it should have contacted or attempted to contact. CFS does not oppose a conditional reversal to correct these errors. We agree with the parties that a conditional reversal is warranted.

"ICWA is a federal law that gives Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation." (*In re W.B.* (2012) 55 Cal.4th 30, 48.) "When ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding." (*In re K.T.* (2022) 76 Cal.App.5th 732, 741; 25 U.S.C. § 1911.) California has adopted various procedural and substantive provisions of ICWA. (*In re E.C.* (2022) 85 Cal.App.5th 123, 138; § 224, et seq.)

The question of whether ICWA applies turns on whether the minor is an Indian child. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1129 (*Dezi C.*).) Consistent with ICWA, California law defines an '"Indian child"' as an unmarried person under 18 years of age, who is either: "(A) [a] member or citizen of an Indian tribe" or "(B) [e]ligible for membership or citizenship in an Indian tribe and … a biological child of a member or citizen of an Indian tribe." (§ 224.1, subd. (b)(1); 25 U.S.C. § 1903(4).) Because it is typically not self-evident whether a child is an Indian child, federal and state law both mandate certain inquiries to be made in each case. (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678, overruled on other grounds in *Dezi C.*, *supra*, at p. 1152, fn. 18.)

6

Federal regulations require state courts to ask each participant at the commencement of a child custody proceeding "whether there is a 'reason to know' that the child is or may be an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1129-1130; 25 C.F.R. § 23.107(a) (2024).)

California law imposes "an affirmative and continuing duty" on the juvenile court and the child protective agency to inquire whether a child who is the subject of a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) This continuing duty applies in all dependency cases (§ 224.2, subd. (a)) and can be divided into three phases—the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice. (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The duty of initial inquiry includes, but is not limited to, asking the child, the party who reported the abuse or neglect, and each family member with whom the child protective agency has contact, including extended family members, whether the child is or may be an Indian child. (§ 224.2, subd. (b)(1).)

If the initial inquiry gives the juvenile court or the child protective agency "reason to believe" that an Indian child is involved, then the juvenile court and the agency have a duty to conduct "further inquiry." (§ 224.2, subd. (e).) "[R]eason to believe" exists when there is "information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (§ 224.2, subd. (e)(1).) "Further inquiry includes, but is not limited to, interviewing the parents and extended family members, contacting the BIA and the State Department of Social Services for assistance, and contacting the relevant tribe and 'any other person that

7

may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.'" (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1100; § 224.2, subd. (e)(2); Cal. Rules of Court, rule 5.481(a)(4).)

Upon conducting its inquiry, if the juvenile court or child protective agency has "'reason to know'" an Indian child is involved, ICWA notices must be sent to the relevant tribes. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742, overruled on other grounds in *Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18; § 224.3, subd. (a); 25 U.S.C. § 1912(a).) Notice enables the tribes to determine whether the child involved is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over the matter. (*In re Ricky R.*, *supra*, 82 Cal.App.5th at p. 678; *In re T.G.* (2020) 58 Cal.App.5th 275, 288.)

The juvenile court may find that ICWA does not apply if the child protective agency has complied with its duty of inquiry and there is no reason to know that the child is an Indian child. (§ 224.2, subd. (i)(2); Cal. Rules of Court, rule 5.481(b)(3)(A).) However, before the juvenile court makes such a finding, it must ensure the agency has made an adequate inquiry under ICWA and related California law. (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 566-567.) "A juvenile court's finding that ICWA does not apply implies 'that social workers [have] fulfilled their duty of inquiry.'" (*Id.* at p. 567.) "We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence." (*In re H.V.* (2022) 75 Cal.App.5th 433, 438.)

Non-Indian parents have standing to raise issues of ICWA compliance on appeal. (*In re T.G.*, *supra*, 58 Cal.App.5th at p. 291; *In re B.R.* (2009) 176 Cal.App.4th 773, 779.)

8

Here, upon its initial inquiry of the parents, CFS was informed that the children may have Indian ancestry through their mother's relation to the Tigua people. This information was sufficient to establish a reason to believe the children were Indian children and triggered a duty to conduct a further inquiry. (§ 224.2, subd. (e)(1); *In re D.F.*, *supra*, 55 Cal.App.5th at p. 569; *In re M.W.* (2020) 49 Cal.App.5th 1034, 1044-1045.) Further inquiry, as noted, required CFS to contact the BIA, the State Department of Social Services, the relevant tribe, and any other person that may reasonably be expected to have information regarding the child's tribal membership, citizenship status, or eligibility. (§ 224.2, subd. (e)(2); *In re Kenneth D.*, *supra*, 16 Cal.5th at p. 1100.)

CFS mailed an ICWA-030 notice of the proceedings to the BIA and the Pueblo of Isleta tribe in New Mexico. CFS acknowledges that it sent the notice to the wrong tribe. The Tigua people are part of the Ysleta del Sur Pueblo in Texas, not the Pueblo of Isleta in New Mexico. (https://www.ysletadelsurpueblo.org/.) The Ysleta del Sur Pueblo and the Pueblo of Isleta, New Mexico, are two separate federally recognized tribes. (89 Fed. Reg. 99899-99903 (Dec. 11, 2024).) Additionally, the ICWA-030 notice CFS sent was incomplete because it failed to include known familial biographical information, including—as the juvenile court twice pointed out—the maternal grandmother's date of birth. (See *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 705 [ICWA noticing should contain enough information to permit the tribe to conduct a meaningful review of its records to determine the child's eligibility for membership].)

CFS also failed to contact the State Department of Social Services, as required (§ 224.2, subd. (e)(2)(B)), and by their own acknowledgement, failed to contact or

9

attempt to contact known relatives who "may reasonably be expected to have information regarding the [children's] membership, citizenship status, or eligibility" in the Tigua tribe (§ 224.2, subd. (e)(2)(C)), including the children's maternal great-aunts and great-uncles who lived in Texas, and the children's maternal great-grandmother.

"[A] judgment must be conditionally reversed when error results in an inadequate ICWA inquiry." (*In re Kenneth D.*, *supra*, 16 Cal.5th at p. 1094; *Dezi C.*, *supra*, 16 Cal.5th at p. 1125.) "When there is an inadequate inquiry and the record is underdeveloped, it is impossible for reviewing courts to assess prejudice because we simply do not know what additional information will be revealed from an adequate inquiry." (*Dezi C.*, at p. 1125.) We therefore agree with the parties that "conditional reversal is warranted in order to develop the record and cure the inadequacy." (*Id.* at p. 1145.)

Father further contends the juvenile court violated his right to due process of law by finding that ICWA did not apply at hearings where neither he, nor his counsel were present. Mother joins this argument. Because we are conditionally reversing for CFS to complete its ICWA inquiry, we need not address whether the alleged due process violation is an additional basis for reversal. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5 [appellate courts will not address issues the resolution of which are unnecessary to the disposition of the appeal].) However, in the interest of finality, we will direct the juvenile court on remand to make its ICWA finding at a hearing in which the parents have been given notice and are represented by counsel. (See *In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435-1436.)

**DISPOSITION**

The order terminating parental rights is conditionally reversed and the matter is remanded to the juvenile court for CFS to comply with the inquiry, and if applicable, notice provisions of ICWA and related California law.  Thereafter, the juvenile court is directed to hold a hearing, at which the parents are represented by counsel, to determine whether ICWA applies.  If the court determines that ICWA applies, it shall proceed in conformity with ICWA and related California law.  If the court determines ICWA does not apply, it shall reinstate the order terminating parental rights.[2]

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

CODRINGTON
J.
RAPHAEL
J.

---

[2]     We do not direct the immediate issuance of the remittitur at this time.  CFS does not oppose our doing so, but the parents have not taken a position on this issue.  (See Cal. Rules of Court, rule 8.272(c)(1) ["A Court of Appeal may direct immediate issuance of a remittitur only on the parties' stipulation or on dismissal of the appeal under rule 8.244(c)(2)"].)

11